IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Reginald C. Sweat, #257472, ) | |
| ) | CIVIL ACTION NO. 9:09-1255-HFF-BM |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| Doris Cook, individual and official capacity ) | **REPORT AND RECOMMENDATION** |
| and Dr. Harry D. McKinney, individual ) | |
| and official capacity, ) | |
| ) | |
| Defendants. ) | |
| _____) | |

This action has been filed by the Plaintiff, pro se, pursuant to 42 U.S.C. § 1983. Plaintiff, an inmate with the South Carolina Department of Corrections (SCDC), alleges violations of his constitutional rights by the named Defendants.

The Plaintiff filed a motion for summary judgment on November 10, 2009. Plaintiff also submitted two declarations in support of this motion, one on December 1, 2009 and a second on December 17, 2009. The Defendants thereafter filed their own motion for summary judgment as well as a response in opposition to the Plaintiff's motion on December 21, 2009.

As the Plaintiff is proceeding pro se, a Roseboro order was entered by the Court on December 22, 2009, advising Plaintiff of the importance of the Defendants' motion for summary judgment and of the need for him to file an adequate response. Plaintiff was specifically advised that

- 1 -



if he failed to respond adequately, the Defendants' motion may be granted, thereby ending his case. Plaintiff thereafter filed a memorandum in opposition to the Defendants' motion on January 4, 2010.

These motions are now before the Court for disposition.[1]

## Background and Evidence

Plaintiff alleges in his verified complaint[2] that on November 26, 2008 he signed up for a doctor's visit about receiving pain medication and a walking cane for a back and neck injury he had sustained previously at the county jail. Plaintiff alleges that he went to sick call and was told he would be rescheduled in the near future, which "continuously happened each time I went to medical" for over six months. Plaintiff lists six dates (through March 10, 2009) for when he went to sick call.

Plaintiff alleges that he signed up to talk to the grievance counselor to file a grievance because his medical condition was getting worse and he needed more effective pain medication, and that he has also written several individuals, to include the warden, the major, and the head nurse, as well as the South Carolina Director of Prisons, but that nothing has been done to help him. Plaintiff alleges that he believes his "current condition of pain could have been prevented if [his] requests to be seen by the doctor would have been met in a timely manner or if I could have been sent to a

---

[1] This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d) and (e), D.S.C. Both sides have filed motions for summary judgment. As these motions are dispositive, this Report and Recommendation is entered for review by the Court.

[2] In this Circuit, verified complaints by pro se litigants are to be considered as affidavits and may, standing alone, defeat a motion for summary judgment when the allegations contained therein are based on personal knowledge. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991). Plaintiff has filed a verified Complaint. Therefore, the undersigned has considered the factual allegations set forth in the verified Complaint in issuing a recommendation in this case.



facility where they could have been met." Plaintiff alleges that the Defendant Cook is the head nurse who failed to treat his complaints even after he had written numerous requests, and that he believes the Defendant Dr. McKinney "should have acted more professional towards my complaints also."

Plaintiff alleges that on April 23, 2009 (while he was housed in the special management unit) he awoke with the "same complaints", at which time the SMU nurse asked for him to be taken to medical. Plaintiff alleges his blood pressure was 180/100 and his cholesterol was 200. Plaintiff alleges that he suffered a lot of pain and mental anguish during the six months that he was delayed treatment, and that he also suffered a temporary loss of "30 minutes of memory". Plaintiff alleges that after twenty-four hours in constant pain, the medical staff could not get his blood pressure "past 150", but that instead of being transported to a medical facility or to an emergency hospital, he was sent back to the SMU. Plaintiff alleges that he thereafter awoke again to pain on April 24, 2009, and that he was suffering from numbness in his back, neck and legs, as well as a migraine headache. Plaintiff alleges that he waited to see the officer doing security check so that he could notify the officer that he had fallen and suffered an injury to his head when he was attempting to use the bathroom and blacked out. Plaintiff alleges that the officer advised him that medical was going to see him as soon as they got in, although Plaintiff believes he should have been immediately transported to a hospital. Plaintiff alleges that he (apparently later) asked the sergeant on duty when they were going to take him to medical, but that he was advised the institution was on lock down and that he could not be moved at that time.

Plaintiff has attached to his complaint a copy of a Request to Staff Member form dated November 26, 2008 wherein he was seeking a medical appointment, as well as a copy of an Order of Dismissal filed in a lawsuit Plaintiff had filed in the South Carolina Administrative Law



Court. Plaintiff seeks monetary damages, as well as a "medical pardon from prison so I can get proper medical treatment". See generally, Verified Complaint with attached Exhibits.

In support of Plaintiff's motion for summary judgment, he has submitted several exhibits which he contends support his claims. These exhibits include copies of medical summaries indicating that Plaintiff had complaints of back and neck pain for which he requested a cane for walking, a bottom bunk pass, and a new mattress. Plaintiff has also submitted copies of medication administration records.

In support of the Defendants' motion for summary judgment, the Defendant Harry McKinney has submitted an affidavit wherein he attests that he is a physician employed by the SCDC. McKinney attests that Plaintiff's medical records (attached to his affidavit as Exhibit B) show that he has a medical history which includes back surgery for a gunshot wound in 1992, a gunshot wound in his right leg in 1994 with a bullet logged in his testicle, and that Plaintiff fractured his ribs in 1993. McKinney further attests that these records reflect that during a previous incarceration with SCDC starting in April 1999, Plaintiff complained of headaches from a head injury in March 1999. McKinney attests that Plaintiff complained that these headaches occurred when he arose from a supine position and when light first hit his eyes, causing blurred vision and numbness in his arms. McKinney attests that a CT scan was normal, and Plaintiff was treated with medication. Plaintiff was released from prison in June 2000.

McKinney attests that Plaintiff returned to prison in October 2008, and on November 17, 2008 complained of pain in his neck and back area as a result of a fall and hitting a wall in March 2008, while he was in the Richland County Jail. Plaintiff requested a cane to help with balance problems, and a nurse noted that Plaintiff walked with a limp. McKinney attests that he ordered a



cane for the Plaintiff on December 5, 2008.

McKinney attests that on December 11, 2008, Plaintiff wanted a refill of his Ibuprofen. Plaintiff was walking with a cane at that time. Plaintiff complained that Ibuprofen irritated his stomach and asked for another drug; however, the nurse refilled the Ibuprofen prescription. Plaintiff was thereafter evaluated by a nurse on March 10, 2009 for complaints of numbness in his feet and hands that "comes and goes". Plaintiff was again observed to be walking with a cane. Although Plaintiff also said he had back pain, he was able to move all of his extremities.

McKinney attests that he examined the Plaintiff on April 15, 2009 for complaints of numbness in his hands and feet "on and off" since his fall in March 2008 at the Richland County Jail. McKinney attests that he noted that he and another doctor had treated Plaintiff ten years earlier for similar complaints and problems during Plaintiff's previous prison stay. At that time, Plaintiff had received Motrin, Robaxin, and physical therapy. McKinney attests that during Plaintiff's examination he observed Plaintiff ambulating with ease, that he had normal back flexion, and that he got on an off the table with ease. Plaintiff's back was found to be within normal limits, and he had full range of motion of his extremities. McKinney attests that he noted that Plaintiff had chronic back pain and a history of falls and paresthesias, and that he ordered lab work, lumbar/sacral and cervical spine x-rays, and a bottom bunk. He also prescribed Phenylgesic and Neurontin.

McKinney attests that on April 23, 2009, Plaintiff complained of a severe headache that started in the morning. A nurse reported that Plaintiff fell out of his cell as she was making medication rounds, and correctional officers brought him to medical in a wheelchair. McKinney attests that he examined Plaintiff and noted that he had seen him eight days earlier. The



lumbar/sacral spine x-ray he had previously ordered was within normal limits, while the cervical spine x-ray he had ordered showed that Plaintiff had only minimal degenerative joint disease. McKinney attests that he concluded that Plaintiff had had an orthostatic syncopal episode when standing from his bunk with questionable loss of consciousness. Nevertheless, Plaintiff was in no acute distress, was alert and oriented times 3, and his physical examination was within normal limits. McKinney attests that Plaintiff was found to have high blood pressure with a vascular headache, and he ordered Plaintiff to be observed for three days with neuro checks. McKinney also ordered blood pressure checks, lab work, a low fat diet, and he discontinued Plaintiff on Neurontin and started him on Clonidine, Lotensin, and Lopid. McKinney attests that later that evening, when Plaintiff's blood pressure went down, he was released to his dorm.

Plaintiff had a follow-up examination on April 24, 2009. Plaintiff reported that when he stood up to go to the bathroom, he experienced numbness and aching in his legs and then passed out. He was not sure how long he was on the floor, but claimed that he hit his head on the toilet. The nurse reported that when Plaintiff arrived he moved his extremities and walked into the office without problems, and that he had clear speech and equal bilateral hand grips. Examination of the head revealed some tenderness on the forehead with scant swelling, but no abrasions or bruising. Later that afternoon, a nurse reported that Plaintiff was standing at his cell door for his medications, at which time he was alert and oriented, but still complained of a headache.

McKinney attests that when the nurse checked on the Plaintiff the following day (April 25, 2009), Plaintiff only complained of a headache that was not as bad as the day before, and he was found to be in no acute stress and walked with a steady gait. Later that evening, Plaintiff reported to a nurse that his head no longer hurt, and he felt better. Plaintiff's blood pressure was



checked again on April 26, and April 27, 2009. On April 28, 2009, Plaintiff complained of having a bad migraine headache and leg pain when he woke up in the morning, with his headache and leg/back pain being a ten on a scale of ten. McKinney attests that while Plaintiff claimed that his pain medications were not helping, he ambulated into the medical office with no problems. McKinney attests that he ordered a CT scan of the brain to rule out injury and lesions, and that it was normal.

McKinney attests that on May 12, 2009, Plaintiff told a nurse that his family had been talking to an outside medical doctor who said that Plaintiff had post traumatic neurosis with a depressive reaction that was causing his elevated blood pressure. Plaintiff told the nurse that the doctor said he had a case for deliberate indifference, and that he would assist Plaintiff with a lawsuit. Plaintiff's blood pressure was thereafter checked on May 14, 2009 and again on May 20, 2009, with his blood pressure being within normal limits on both occasions. Weekly blood pressure tests were then discontinued. McKinney attests that on May 30, 2009, Plaintiff complained that he had had migraine headaches for four days, and that his back pain was causing the headaches and increased blood pressure. McKinney attests that Plaintiff saw a mental health counselor on June 5, 2009, who found no psychotic symptoms. McKinney attests that Plaintiff thereafter submitted a request for a muscle relaxer and a new medication for his back pain, as well as a request to see someone about treatment for his "stress induced depression" and "stress induced" pain to his legs, lower back and neck. On July 7, 2009 Plaintiff asked to see a psychiatrist for "stress induced depression". Plaintiff denied suicidal and homicidal ideation when his medications were renewed.

McKinney attests that Plaintiff was treated for a common cold on August 6, 2009, at which time he ambulated into medical with a steady gait and no limp using his cane. Plaintiff



complained that his medication was not helping his back pain, and a doctor ordered Naproxin. Plaintiff was subsequently involved in an altercation on August 26, 2009, but refused medical treatment. On August 28, 2009, Plaintiff asked to see a doctor for the numbness in his arms and legs and for his headaches and chronic pain. A nurse reported that Plaintiff was walking with a cane, had no weakness, had strong radial pulses, and full range of motion. The nurse told Plaintiff to take his medications.

McKinney attests that a doctor examined the Plaintiff on September 29, 2009, and he was found to be in no acute distress and ambulated without difficulty, carrying his cane in his hand. McKinney attests that because Plaintiff said the ibuprofen was not working, the doctor prescribed Naproxin for pain. On October 19, 2009, Plaintiff again complained of back pain, and asked to see someone about his "post traumatic neurosis with a depressive reaction. A nurse gave Plaintiff an appointment to see the doctor. On November 3, 2009, Plaintiff was treated by a nurse for the same complaints, and on November 4, 2009 a correctional officer reported that Plaintiff had a headache and thought he had high blood pressure. A nurse then ordered Plaintiff to remain in bed and report to sick call the next day, if his symptoms persisted.

McKinney attests that Plaintiff does not have a diagnosis of "post traumatic neurosis with a depressive reaction", and that there is no evidence that any doctor actually made this diagnosis. McKinney attests that Plaintiff has received and continues to receive care and treatment for all of his medical problems, including his complaints of pain and numbness in his back, neck and legs, emotional distress, migraine headaches and blackouts. McKinney attests that Plaintiff has complained about these problems since 1999, and that his complaints are evaluated and appropriately treated.


Finally, McKinney attests that the Defendant Doris Cooke, a nurse, is mentioned in Plaintiff's medical summaries only one time, on July 13, 2009, when she signed off on a doctor's note. See generally, McKinney Affidavit, with attached Exhibit (Medical Records).

**Discussion**

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(c), Fed.R.Civ.P. The moving party has the burden of proving that judgment on the pleadings is appropriate. Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing there is a genuine issue for trial." Rule 56(e), Fed.R.Civ.P. Further, while the Federal Court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, see Cruz v. Beto, 405 U.S. 319 (1972); Haines v. Kerner, 404 U.S. 519 (1972), the requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleadings to allege facts which set forth a Federal claim, nor can the Court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Social Services, 901 F.2d 387 (4th Cir. 1990). Here, after careful review and consideration of the arguments and evidence, the undersigned finds and concludes that the Defendants are entitled to summary judgment in this case.

In order to proceed with a claim under § 1983 for denial of medical care, Plaintiff must present evidence sufficient to create a genuine issue of fact as to whether any named Defendant was deliberately indifferent to his serious medical needs. Estelle v. Gamble, 429 U.S. 97, 106 (1976); Farmer v. Brennen, 511 U.S. 825, 837 (1994); Sosebee v. Murphy, 797 F.2d 179 (4th Cir.



1986); Wester v. Jones, 554 F.2d 1285 (4th Cir. 1977); Russell v. Sheffer, 528 F.2d 318 (4th Cir. 1975); Belcher v. Oliver, 898 F.2d 32 (4th Cir. 1990). Plaintiff has failed to submit any such evidence. The evidence before this Court includes voluminous medical records showing that Plaintiff has received continuous and ongoing treatment for his medical complaints, and none of the information contained in these medical records supports Plaintiff's claims of inadequate medical care, nor do Plaintiff's own exhibits attached to his complaint or to his "Declaration" provide support for such a claim. Further, a licensed physician who has been involved in providing direct care to the Plaintiff attests that Plaintiff has been afforded prompt and adequate care for his medical complaints. Plaintiff has provided no evidence from a medical professional to dispute this evidence. see Scheckells v. Goord, 423 F.Supp. 2d 342, 348 (S.D.N.Y. 2006) (citing O'Connor v. Pierson, 426 F.3d 187, 202 (2d Cir. 2005) ["Lay people are not qualified to determine...medical fitness, whether physical or mental; that is what independent medical experts are for."]).

While Plaintiff may not agree with the extent and nature of the medical care he has received, he cannot simply allege in a conclusory fashion that he has not received adequate medical care or attention, otherwise provide no supporting evidence, and expect to survive summary judgment. Papasan v. Allain, 478 U.S. 265, 286 (1986) [Courts need not assume the truth of legal conclusions couched as factual allegations]; Morgan v. Church's Fried Chicken, 829 F.2d 10, 12 (6th Cir. 1987) ["Even though pro se litigants are held to less stringent pleading standards than attorneys the court is not required to 'accept as true legal conclusions or unwarranted factual inferences.'"]; see also Green v. Senkowski, 100 Fed.Appx. 45 (2d Cir. 2004) (unpublished opinion) [finding that plaintiff's self-diagnosis without any medical evidence, and contrary to the medical evidence on record, insufficient to defeat summary judgment on deliberate indifference claim]); cf.



Hill v. Dekalb Regional Youth Detention Center, 40 F.3d 1176, 1188-1189 (11th Cir. 1994)["An inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed"], overruled in part by Hope v. Pelzer, 536 U.S. 730, 739 n. 9 (2002).

In sum, the undersigned can discern no evidence of a constitutional violation in the evidence presented to the Court, and Plaintiff cannot simply rely on his conclusory claims and allegations to avoid dismissal of this case. House v. New Castle County, 824 F.Supp. 477, 485 (D.Md. 1993) [Plaintiff's conclusory allegations insufficient to maintain claim]; Levy v. State of Ill. Dept. of Corrections, No. 96-4705, 1997 WL 112833 (N.D.Ill. March 11, 1997) ["A defendant acts with deliberate indifference only if he or she 'knows of and disregards' an excessive risk to inmate health or safety.'"], quoting Farmer, 511 U.S. at 837. Plaintiff may, of course, pursue a claim in state court if he believes the medical care he has received has been inadequate. However, the evidence before the Court is insufficient to raise a genuine issue of fact as to whether any named Defendant was deliberately indifferent to his serious medical needs, the standard for a constitutional claim, and therefore his federal § 1983 medical claim is subject to dismissal. See DeShaney v. Winnebago County Dep't of Social Servs., 489 U.S. 189, 200-203 (1989) [§ 1983 does not impose liability for violations of duties of care arising under state law]; Baker v. McClellan, 443 U.S. 137, 146 (1976) [§ 1983 claim does not lie for violation of state law duty of care]; Estelle, 429 U.S. at 106 ["medical malpractice does not become a constitutional violation merely because the victim is a prisoner."]; see also Brooks v. Celeste, 39 F.3d 125 (6th Cir. 1994); Sellers v. Henman, 41 F.3d 1100 (7th Cir. 1994); White v. Napoleon, 897 F.2d 103, 108-109 (3d Cir. 1990); Smart v. Villar, 547 F.2d 112 (10th Cir. 1976) [affirming summary dismissal].



## Conclusion

Based on the foregoing, it is recommended that the Plaintiff's motion for summary judgment be **denied**, that the Defendants' motion for summary judgment be **granted**, and that this case be **dismissed.**

The parties are referred to the Notice Page attached hereto.

_____
Bristow Marchant
United States Magistrate Judge

March 12, 2010

Charleston, South Carolina



**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

